**HOME DEPOT, INC., and Gaylord's National Corporation, Plaintiffs-Appellees,**

v.

**William J. GUSTE, Jr., Attorney General of the State of Louisiana, Defendant-Appellant.**

No. 84–3532.

United States Court of Appeals, Fifth Circuit.

Oct. 10, 1985.

Rehearing En Banc Denied Dec. 10, 1985.

William J. Guste, Jr., Atty. Gen., Louis M. Jones, Kenneth C. Fonte, Asst. Atty. Gen., New Orleans, La., for defendant-appellant.

Sessions, Fishman, Rosenson, Boisfontaine & Nathan, Robert E. Barkley, Jr., Francis R. White, III, New Orleans, La., Smith, Cohen, Ringel, Kohler & Martin, John L. Latham, Robert W. Beynart, Atlanta, Ga., for plaintiffs-appellees.

Harvey C. Koch, New Orleans, La., for amicus-K-Mart.

Before POLITZ, GARWOOD, and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

 Plaintiffs-appellees, Home Depot, Inc., and Gaylord's National Corp., are national chain corporations which own and operate retail stores in the State of Louisiana. In this suit, they sought declaratory and injunctive relief against the Attorney General of Louisiana. Plaintiffs alleged that La.Rev.Stat.Ann. § 51:194[1] of the

---

1. La.Rev.Stat.Ann. § 51:194 is one of four laws which together constitute the Louisiana Sunday Closing Laws. *See also* La.Rev.Stat.Ann. §§ 51:191–51:193. Section 51:194 provides:

**"Sunday sale of certain consumer goods prohibited; penalties; injunctive relief; exemptions**

"A. On the first day of the week, commonly designated as Sunday, it shall be unlawful for any person, whether at retail, wholesale or by auction, to sell, attempt to sell, offer to sell or engage in the business of selling, or require any employee to sell any clothing or wearing apparel; lumber or building supply materials; furniture; home or business or office furnishings; any household, office or business appliances; new or used automobiles and trucks or parts for and servicing of such motor vehicles in all places of business wherein such motor vehicles are sold. In the case of an emergency, parts and servicing may be sold.

"B. Whoever violates any provision of this Section shall be fined not more than one hundred dollars for the first offense. If it is shown upon the trial of a case involving a violation of this Section that the defendant once before has been convicted of this same offense, he shall, upon a second conviction and upon each subsequent conviction, be imprisoned for not more than six months or be fined not more than five hundred dollars, or both.

"C. The purpose of this Section being to promote the health, recreation and welfare of the people of this state and to prevent unfair competition among persons, firms or business establishments, the operation of any business, whether by an individual, partnership or corporation, in contravention of the provisions of this Section is declared to be a nuisance, and any person may apply to any court of competent jurisdiction for and may obtain an injunction restraining such violation.

"D. A sale of an item falling within the categories enumerated in Subsection A of this Section by persons not engaged in the business of selling such an item shall be exempt from the operation of this Section.

"E. The provisions of this Section shall not apply to any sale or sales:

"(1) for charitable purposes; or

"(2) Of items for funeral or burial purposes; of items sold as a part of or in conjunction with the sale of real property or mobile homes; or of drugs, medicines, medical or surgical supplies and appliances.

"(3) Of clothing or wearing apparel, new and used furniture, new and used home or business or office furnishings, or any new or

State's Sunday Closing Laws violates the Constitutions of the United States and the State of Louisiana. They requested an injunction preventing the Attorney General from enforcing section 51:194, and La.Rev. Stat.Ann. § 51:1405 (a part of the Louisiana Unfair Trade Practices Act) in conjunction therewith, against them in the future.[2] Following oral argument, the district court found that there was a substantial likelihood that plaintiffs would prevail on the merits of their constitutional claim and granted them preliminary injunctive relief.[3]

used household, office or business appliances in the Vieux Carre section of the City of New Orleans ... [boundary described].
" . . . .
"(5) In retail outlets, each not exceeding one thousand five hundred square feet in area, of wearing apparel, souvenirs, and jewelry, used or antique furniture, or new and used home or office accessories in that certain section of the city of Baton Rouge, which is within a historical district or part of a historical district, and which is inside the area bounded by ... [description of boundary]. This specific exemption shall not be applicable to any one-time auction or liquidation sale held in the Baton Rouge Centroplex, except for those such functions held by non-profit organizations otherwise authorized by law.
"(6) In the area of the New Orleans Exhibition Hall bounded by ... [description of boundary]."

Section 51:194 E(4), which authorized sales in connection with the Louisiana World Exposition, by its own terms expired after November 11, 1984.

Section 51:191 provides that "[a]ll stores, shops, saloons, and all places of public business, licensed under the law of Louisiana or under any parochial or municipal law and all plantation stores, shall be closed" on Sunday "during which time no proprietor thereof shall give, trade, barter, exchange or sell any of the stock or any article of merchandise kept in his establishment." Violation is punishable by a fine of $25 to $250, a ten- to thirty-day jail term, or both. There is no provision for enjoining a violation (as in section 51:194 C). Section 51:192 A provides that "R.S. 51:191 shall not apply to the following: (1) Newsdealers. (2) The sale of ice. (3) Watering places and public parks. (4) Places of resort for recreation and health. (5) Newspaper offices. (6) Keepers of soda fountains. (7) Printing offices. (8) Book stores. (9) Art galleries insofar as sales of original art and prints constitute a substantial portion of their operation. (10) Drug stores and apothecary shops. (11) Undertaker shops. (12) Public and private markets. (13) Bakeries. (14) Dairies. (15) Livery stables. (16) Railroads, whether steam or horse. (17) Hotels. (18) Boarding houses. (19) Steamboats and other vessels. (20) Warehouses for receiving and forwarding freights. (21) Restaurants. (22) Telegraph offices. (23) Theatres, or any place of amusement, unless intoxicating liquors are sold in the premises. (24) Sales at a convention and trade show held in a public room or rooms of a hotel or at a public convention facility except the sale of any clothing or wearing apparel, lumber or building supply materials, or furniture and appliances. (25) Sales at the site of the 1984 Louisiana World Exposition, in the city of New Orleans, from May 12, 1984 through and including November 11, 1984 ... [describes location], and any buildings, or portions thereof, that are located on or near the perimeter of said site and leased or operated by Louisiana World Exposition, Inc., its subsidiaries, sublessees or licensees." Section 51:192 B provides: "stores may be opened for the purpose of selling anything necessary in sickness and for burial purposes." Section 51:192 C allows hotels and boarding houses to "sell wine for table use" on Sundays, but otherwise prohibits the sale of alcoholic beverages "in any public place on Sundays" (with exception for physicians' administration or prescription). Section 51:193 requires the Sunday closing of barbershops.

Sections 51:191 and 51:192 were originally enacted in 1886. Section 51:192 A was amended in 1979 to add the exemption for art galleries and in 1983 to add the World's Fair exemption. Section 51:193 was enacted in 1918. Section 51:194, the subject of this suit, was enacted in 1962, and has been amended on several occasions to add to the list of exemptions contained in section 51:194 E. *See Louisiana v. K-Mart Corp.,* 462 So.2d 616, 618 (La.1985).

2. The State previously attempted to enforce the Sunday Closing Laws against appellees. *See Louisiana v. K-Mart Corp.,* 462 So.2d 616, 617–18 (La.1985) (State filed petition for injunctive relief seeking to restrain appellees from selling merchandise on Sundays).

3. The court found that there was a substantial likelihood that plaintiffs would succeed on the merits of their claims that section 51:194 does not bear a "reasonable relationship to a legitimate State interest," that the Attorney General attempted to enforce the statute in a "selective and discriminatory manner," and that the statute "is impermissibly vague." 589 F.Supp. at 1263–64.

The district court rejected plaintiffs' additional argument that all four of the Sunday Closing Laws violate the establishment clause of the federal and state Constitutions. 589 F.Supp. at 1264. Appellees have not challenged this finding. Based on the record before us, we nevertheless state our agreement with the district court that there is no indication that the State

*Home Depot, Inc. v. Louisiana,* 589 F.Supp. 1258, 1263, 1267 (E.D.La.1984). The court subsequently held section 51:194 unconstitutional and granted a permanent injunction preventing the Attorney General from enforcing or attempting to enforce the provisions of section 51:194 and section 51:1405 in conjunction therewith. A motions panel of this Court, on request of the Attorney General, stayed the district court's order pending this appeal. We find that the district court erred in granting declaratory and injunctive relief, and reverse.[4]

Legislature had anything other than a secular purpose in mind in enacting the statutes. In determining whether the purpose behind a state Sunday closing law is religious, relevant factors to consider are the language of the statute itself, developments in the legislative history, and the characterization given the statute by state courts. *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 1115–19, 6 L.Ed.2d 393 (1961); *Gallagher v. Crown Kosher Super Mkt. of Mass.,* 366 U.S. 617, 81 S.Ct. 1122, 1127–29, 6 L.Ed.2d 536 (1961) (plurality); *Two Guys from Harrison-Allentown, Inc. v. McGinley,* 366 U.S. 582, 81 S.Ct. 1135, 1140–43, 6 L.Ed.2d 551 (1961). La.Rev. Stat.Ann. § 51:194 C itself states the legislative intent behind all four statutes. *See Harry's Hardware, Inc. v. Parsons,* 410 So.2d 735, 736 (La.), *cert. denied,* 459 U.S. 881, 103 S.Ct. 178, 74 L.Ed.2d 145 (1982). Section 51:194 C provides that "[t]he purpose of this Section [is] ... to promote the health, recreation and welfare of the people of [Louisiana] ... and to prevent unfair competition among persons, firms or business establishments" by providing a uniform day of rest. La.Rev.Stat.Ann. § 51:194 C. *See Harry's Hardware, Inc.,* 410 So.2d at 736, 738; *Louisiana v. Scallon,* 374 So.2d 1232, 1233 (La.1979) (Tate, J.). This statement of a secular purpose indicates that the laws do not violate the establishment clause. *See Discount Records, Inc. v. City of North Little Rock,* 671 F.2d 1220, 1221–22 (8th Cir.1982) (per curiam) (Arkansas Sunday closing laws did not violate establishment clause since the Legislature "specified that the purpose of the Act was to provide for a uniform day of rest"). The mere fact that Sunday is the day of the week which the Legislature set aside for rest does not implicate the establishment clause. The Supreme Court wrote in *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 1113–15, 6 L.Ed.2d 393 (1961):

"[T]he 'Establishment' Clause does not ban federal or state regulation of conduct whose reason or effect merely happens to coincide or harmonize with the tenets of some or all religions.

" ....

" ... Sunday Closing Laws, like those before us, have become part and parcel of this great governmental concern wholly apart from their original purposes or connotations. The present purpose and effect of most of them is to provide a uniform day of rest for all citizens; the fact that this day is Sunday, a day of particular significance for the dominant Christian sects, does not bar the State from achieving its secular goals. To say that the States cannot prescribe Sunday as a day of rest for these purposes solely because centuries ago such laws had their genesis in religion would give a constitutional interpretation of hostility to the public welfare rather than one of mere separation of church and State."

*See also* J. Nowak, R. Rotunda & J. Young, *Constitutional Law* 1069 (2d ed. 1983) (construing *McGowan* ); *Epstein v. Maddox,* 277 F.Supp. 613, 618 (N.D.Ga.1967), *aff'd without opinion,* 401 F.2d 777 (5th Cir.1968) (per curiam) ("The mere fact that a police regulation parallels some religious commandment does not make it invalid as a religious enactment"; upholding Georgia Sunday closing laws); *Cardinal Sporting Goods Co. v. Eagleton,* 213 F.Supp. 207, 218 (E.D.Mo.) (three-judge court), *vacated for mootness,* 374 U.S. 496, 83 S.Ct. 1866, 10 L.Ed.2d 1043 (1963) (Missouri Sunday closing laws "primarily served the secular purpose, independent of encouragement, if any, of religious observances").

The Louisiana Supreme Court's characterization of the statutory purpose also militates against the conclusion that the legislative intent behind the Sunday Closing Laws was of a religious nature. *See Walker v. Judge of Section A,* 1 So. 437, 439–40 (1887). *See also Baker's Carrollton Shoe Store, Inc. v. Circle Shoes, Inc.,* 161 So.2d 600, 602 (La.Ct.App. 4th Cir.1964) (rejecting establishment clause challenge under federal and state Constitutions and citing *Walker* ); *Louisiana v. Deutch,* 245 La. 819, 161 So.2d 730, 733 (1964) (citing *Walker* for proposition that the "Sunday Laws ... are not violative of any inhibition contained in either the Constitution of the United States or the Constitution of the State of Louisiana").

Finally, we find no contrary evidence in the language of the statute, the formal legislative record, or the Louisiana court decisions to support the argument that the Louisiana Sunday Closing Laws violate the establishment clause of the Constitution.

4. The State argues that the district court should have declined to exercise jurisdiction in this case in accordance with the abstention doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). We agree with the district court's conclusion, however, that appellant voluntarily waived its right to assert the doctrine. *Ohio Bureau of Employment Servs. v. Hodory,* 431 U.S. 471, 97 S.Ct. 1898, 1904, 52

## RATIONAL RELATIONSHIP

█ Appellees challenged section 51:194 of the Sunday Closing Laws, and the district court granted relief, in part on the ground that the statute does not bear a rational relationship to a legitimate State interest, in violation of the equal protection and due process clauses of the fourteenth amendment. We agree with appellant that section 51:194 passes constitutional muster under the applicable rational relationship test.

The stated purpose of section 51:194, set out in the statute itself, is "to promote the health, recreation and welfare of the people of [Louisiana] ... and to prevent unfair competition among persons, firms or business establishments" by establishing a uniform forced day of rest. *See also Harry's Hardware, Inc. v. Parsons*, 410 So.2d 735, 736, 738 (La.), *cert. denied*, 459 U.S. 881, 103 S.Ct. 178, 74 L.Ed.2d 145 (1982) (discussing the objectives of the Sunday closing law and quoting section 51:194 C); *Louisiana v. Scallon*, 374 So.2d 1232, 1233 (La.1979) (Tate, J.) (noting that section 51:194 was "legislatively enacted in the interest of the health, recreation, and welfare of the working population"). Appellees have not challenged the State's legitimate interest in promoting these concerns either before the district court or on appeal. Instead, they argue that there is no rational relationship between the classifications created by the statute and the admittedly proper legislative objective. We disagree.

In *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), the Supreme Court addressed a similar argument, raised by seven department store employees who had been convicted of selling proscribed merchandise, that Maryland's Sunday closing laws were "without rational and substantial relation to the object of the legislation." The Court rejected the constitutional challenge and affirmed the employees' criminal convictions. 81 S.Ct. at 1104–05, 1119. In rejecting the appellants' rational relationship argument, the Court wrote:

"Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds *wholly irrelevant to the achievement of the State's objective.* State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination *will not be set aside if any state of facts reasonably may be conceived to justify it."* 81 S.Ct. at 1105 (emphasis added).

*See also Irby v. Sullivan*, 737 F.2d 1418, 1423 (5th Cir.1984) (per curiam) (quoting *McGowan*). We have emphasized that in suits involving a challenge to the rational basis of a statute, the burden is not upon the state to establish the rationality of its statute, but is upon the challenger to show that the restriction is wholly arbitrary. *Irby*, 737 F.2d at 1423; *Kite v. Marshall*, 661 F.2d 1027, 1030 (5th Cir.1981), *cert. denied*, 457 U.S. 1120, 102 S.Ct. 2934, 73 L.Ed.2d 1333 (1982).

In *City of New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976) (per curiam), the Court similarly upheld the validity of a City of New Orleans

L.Ed.2d 513 (1977); *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 556 n. 3, 42 L.Ed.2d 532 (1975); *see also McGee v. Estelle*, 722 F.2d 1206, 1211 (5th Cir.1984) (en banc) (quoting *Hodory* in discussion of waiver).

We also note the arguable *res judicata* effect of the Supreme Court of Louisiana's recent opinion in *Louisiana v. K-Mart Corp.*, 462 So.2d 616 (La.1985). Inasmuch as appellant has failed to raise the issue of *res judicata* or collateral estoppel, though, we decline to address that

question. *Res judicata* is an affirmative defense which should be set forth in the pleadings. Fed. R.Civ.P. 8(c). Even if it is not practicable to raise the issue in the pleadings, the party wishing to raise the defense is obliged to assert it at the earliest moment practicable. *Evans v. Syracuse City School Dist.*, 704 F.2d 44, 47–48 (2d Cir.1983). Since appellant at no time has affirmatively asserted the defense, we do not reach the issue of whether it is applicable in this case.

municipal ordinance that prohibited the sale of food items from pushcart vendors in the Vieux Carre, or French Quarter, of the city, but which permitted vendors who had operated for eight or more years prior to January 1, 1972 to continue their operations in that district. The Court stated:

"Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest. *States are accorded wide latitude in the regulation of their local economies* under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude. *Legislatures may implement their program step by step, ... in such economic areas,* adopting regulations that only *partially* ameliorate a perceived evil and deferring complete elimination of the evil to future regulations.... In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines ...; *in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment."* 96 S.Ct. at 2516–17 (citations omitted and emphasis added).

*See also American Real Estate Inst., Inc. v. Alabama Real Estate Comm'n,* 605 F.2d 931, 933 (5th Cir.1979) (quoting *Dukes* ). The *Dukes* Court echoed language contained in *Two Guys from Harrison-Allentown, Inc. v. McGinley,* 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961), in which the Court, *inter alia,* rejected a constitutional challenge to a Pennsylvania Sunday closing law provision that imposed heavier penalties for the sale of selected commodities than were imposed for the sale of other proscribed items. The Court explained,

" 'Evils in the same field may be of different dimensions and proportions, requiring different remedies.... Or the reform may take *one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind....* The legislature may select one phase of one field and apply a remedy there, neglecting the others.' " 81 S.Ct. at 1140 (emphasis added; quoting *Williamson v. Lee Optical of Okla.,* 348 U.S. 461, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955)).

Under the standards of review set out in *McGowan* and *Dukes,* we find that the classifications established by the Legislature are neither "wholly irrelevant to the achievement of the State's objective" nor "wholly arbitrary." *McGowan,* 81 S.Ct. at 1105; *Dukes,* 96 S.Ct. at 2517. The district court found that the statute falls "woefully short of accomplishing its purpose of establishing a 'forced day of rest' " since the statute applies to less than fifteen percent of Louisiana's working population and, of this segment, does not specifically prohibit work on Sunday but only the sale of enumerated categories of goods.[5] 589 F.Supp. at 1264–65. The court also found that "the myriad of exemptions set forth in the statute detract from the stated purpose of promoting the citizens' well-being, and instead

---

**5.** The district court found that the statute applies only to persons employed in the wholesale and retail businesses. Retail and wholesale employees (other than those employed in food stores or eating or drinking establishments, which are not covered) accounted for 235,800 of Louisiana's 1,614,310 workers according to statistics released by the Louisiana Department of Labor in February 1984, or fifteen percent of Louisiana's work force. 589 F.Supp. at 1264 & n. 8.

The district court also noted, in apparent agreement, appellees' argument that retail and wholesale "workers are still free to engage in, or require their employees to engage in stocking shelves, taking inventory, bookkeeping, holding meetings, preparing advertisements, performing cleaning and maintenance work relative to their places of business, and countless other like activities." 589 F.Supp. at 1265.

of preventing unfair competition, ... promote such an undesirable result." 589 F.Supp. at 1265–66.[6] Home Depot and Gaylord's raise these same arguments on appeal.

The Louisiana Legislature, however, could reasonably believe that the wholesale and retail businesses affected by the statute are those that feel the most pressure to remain open for sales on Sunday, and that therefore the fifteen percent of the work force employed in such businesses generally constitute the workers who most need protection; and, likewise, that since the economic pressure is to be open for sales, as opposed to pressure for taking inventory or the like, prohibition of selling generally

affords sufficient employee protection without the necessity of prohibiting all work in the affected establishments. As the Louisiana Supreme Court stated in *Parsons, supra,* "[T]he purpose of the Sunday Closing Law is not the prevention of *all* unfair competition among businesses. By enacting a general prohibition against the conduct of business on Sunday, the law extends the full benefit of the forced day of rest to merchants and other businessmen *who might otherwise feel compelled to remain open."* 410 So.2d at 738 (emphasis added).[7] "It was within the power of the legislature to have concluded that these businesses [those that sold the items whose Sunday sale the statute proscribed]

6. The district court discussed what it considered to be the anomalous consequences of the statute. The court wrote:

> "One's services may be sold on Sunday, but a painter cannot buy paint and a yardsman cannot buy a lawnmower. The statute purports to promote recreation, yet it is unlawful to buy swimsuits, running shoes or gym shorts on Sunday .... Citizens can, and many do, perform necessary home repairs, renovations and the like on Sunday, but the person who is short one two by four, or several nails, or who has misplaced the paintbrush may be required to postpone the household task until the following Sunday." 589 F.Supp. at 1265.

The court fails to recognize that the Legislature has protected those employees who normally would be pressured into remaining open to *sell* the paint and paintbrush, the lawnmower, the sports equipment, and the lumber and nails.

7. The State also points out that section 51:194 complements sections 51:191 and 51:192. Section 51:191 generally requires all "stores, shops, saloons, and all places of public business" to close, and forbids the sale of any merchandise of such establishments, on Sunday. Section 51:192 exempts several specified types of businesses, such as drugstores, bookstores and "public and private markets," from section 51:191. *See* note 1, *supra.* However, the types of businesses which section 51:192 exempts from section 51:191 were not, prior to the 1962 amendment of section 51:194, restricted as to *what* they could sell on Sunday. Thus a drugstore, which section 51:192 exempts from section 51:191, could sell on Sunday, prior to the enactment of section 51:194, clothing or household appliances (Sunday sale of which section 51:194 A now prohibits). *See Parsons,* 410 So.2d at 737 ("Drug stores and grocery stores (as public and private markets) may remain open on Sun-

day .... Moreover, those drug and grocery stores may sell any item of their inventory not expressly prohibited from sale on Sunday by R.S. 51:194(A)."). Thus, the Louisiana Legislature may have felt that section 51:194 complemented sections 51:191 and 51:192 by restricting what could be sold by the businesses exempted from Sunday closing, and also reduced the competitive advantage which the exempted businesses would otherwise have over those not exempted. Drugstores, by being forbidden to sell clothing or household appliances on Sunday, were thus held closer to the purpose of their exemption from the general Sunday closing requirement, and their competitive advantage over clothing and appliance stores was reduced.

Appellees attack the foregoing reasoning by arguing that section 51:191 is essentially meaningless since the exemption in section 51:192 A(12) for "public and private markets" exempts from section 51:191 virtually all businesses that sell anything. They rely in this connection on language in *State v. Penniman,* 68 So.2d 770 (La.1953), indicating a possible broad construction of "market." However, *Penniman* actually held that a grocery store was a private market. And, other language in *Penniman* indicates that the public or private market concept relates primarily to the sale of food products. Moreover, subsequent to *Penniman,* the Louisiana Supreme Court has stated: "We interpret the terms 'public and private markets' [in section 51:192] to mean business establishments the primary purpose of which is the sale of foodstuffs." *National Food Stores of Louisiana, Inc. v. Cefalu,* 280 So.2d 903, 907 (La.1973). *See also Parsons,* 410 So.2d at 737. Finally, appellees' construction would render many of the other exemptions in section 51:192 wholly superfluous (*e.g.,* drugstores, bookstores), as well as virtually destroying section 51:191. Accordingly, we reject appellees' argument in this respect.

were *particularly disrupting* [to] the intended atmosphere of the day" and required regulation even while other businesses were ignored. *McGinley*, 81 S.Ct. at 1140 (emphasis added). We find it particularly significant that the Pennsylvania statute, enacted in 1959, which was sustained in *McGinley*, is generally similar to section 51:194 A. Each prohibits only the Sunday sale of specified products, and the proscribed products are to a large extent the same and are similarly described.[8]

To the extent appellees argue, and the district court found, that section 51:194 should encompass a greater percentage of workers than the fifteen percent employed in retail and wholesale operations in order to be rationally related to the goal of providing a uniform day of rest, we also note that the *Dukes* Court explicitly authorized legislatures to implement their goals "step by step, ... in such economic areas, adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regu-

lations." 96 S.Ct. at 2517; *see also McGinley*, 81 S.Ct. at 1140 (same). Our focus instead is on whether the steps which the Legislature *has* taken to implement the legitimate State goal are rationally related to that objective. We find that the efforts the Louisiana Legislature has taken to protect wholesale and retail workers clearly are rationally related to the goal of providing a day of rest.

■ Likewise, the fact that the Legislature has provided exceptions for certain types of products does not render section 51:194 constitutionally invalid under a rational relationship test, even if the existence of exceptions detracts from the goal of providing a uniform day of rest. The Louisiana Legislature "could reasonably find that the Sunday sale of the exempted commodities was necessary either for the health" and welfare "of the populace or for the enhancement of the recreational atmosphere of the day." *McGowan*, 81 S.Ct. at 1105.[9] Section 51:194 E's exclusion of

8. The Pennsylvania 1959 statute is quoted in *McGinley*, 81 S.Ct. at 1136 n. 1. The commonly proscribed items are as follows:

| Pa.Stat.Ann. § 4699.10 | Section 51.194 A |
| --- | --- |
| "clothing and wearing apparel" | "clothing or wearing apparel" |
| "furniture" | "furniture" |
| "home, business or office furnishings" | "home or business or office furnishings" |
| "household, business or office appliances" | "any household, office or business appliances" |
| "building and lumber supply materials" | "lumber or building supply materials" |

The Pennsylvania statute listed the following items not listed in section 51:194 A: "... clothing accessories, ... hardware, tools, paints, ... jewelry, silverware, watches, clocks, luggage, musical instruments and recordings, or toys, excluding novelties and souvenirs ...." Unlike the Pennsylvania statute, section 51:194 A lists "new or used automobiles and trucks or parts for and servicing of such motor vehicles in all places of business wherein such motor vehicles are sold. In the case of an emergency, parts and servicing may be sold."

Also, the Pennsylvania statute applied only to sales "at retail," while section 51:194 A covers sales "whether at retail, wholesale or by auction."

We also observe the general similarity between section 51:194 A and section 64–2.2 of the South Carolina Code of Laws which was sustained in *Whitney Stores, Inc. v. Summerford*, 280 F.Supp. 406, 408 n. 3 (D.S.C.) (three-judge court), *aff'd without opinion*, 89 S.Ct. 44 (1968) (per curiam).

9. The *McGowan* Court wrote:

"It would seem that a legislature could reasonably find that the Sunday sale of the exempted commodities was necessary either for the health of the populace or for the enhancement of the recreational atmosphere of the day—that a family which takes a Sunday ride into the country will need gasoline for the automobile and may find pleasant a soft

sales made "for charitable purposes" obviously advances the goal of providing for the health and welfare of the population, as do the exemptions for sales of "drugs, medicines, [and] medical or surgical supplies and appliances." The exemption of sales of "items for funeral or burial purposes" similarly may be construed as advancing the purposes of health and welfare by preventing undesirable delays in the disposition of bodies. The Louisiana Legislature could conclude that the need for these items justified their injurious effect on the goal of providing a day of rest. *McGinley*, 81 S.Ct. at 1139 (rejecting fourteenth amendment challenge to Pennsylvania Sunday closing law, and stating, "Of course, as to works of charity, necessity or recreation, the State Legislature could find that the interests of its citizens are best served by permitting these Sunday activities; *that their interference with the absolute tranquility of the day is justified by their requirement and desirability*" (emphasis added)). Moreover, the exclusion of "items sold as a part of or in conjunction with the sale of real property or mobile homes" appears to recognize that such items are more incidents to the sale of real property than they are "consumer goods" which the statute was designed to cover.[10]

Neither does the fact that the Louisiana Legislature created exemptions based on the size and location of certain businesses violate the Constitution. In *McGowan*, the Supreme Court upheld a provision of the Maryland Sunday closing law that permitted some retailers in Anne Arundel County to sell certain types of merchandise on Sunday. The provision had been challenged as violative of equal protection because it "discriminate[d] unreasonably against retailers in other Maryland coun-

ties." 81 S.Ct. at 1106. The Court responded, "[W]e have held that the Equal Protection Clause relates to equality between persons as such, rather than between areas and that territorial uniformity is not a constitutional prerequisite.... [T]he prescription of different substantive offenses in different counties is generally a matter for legislative discretion." 81 S.Ct. at 1106. Under this authority, the exceptions to section 51:194 relating to the sale of certain merchandise in the French Quarter of New Orleans, the "historical district" of Baton Rouge, and the area surrounding the New Orleans Exhibition Hall, do not offend the Constitution.

The *McGowan* Court likewise sustained statutory distinctions drawn *between* vendors within those geographic regions where some Sunday sales activity was permitted. In *McGowan*, the Maryland Legislature had permitted "only certain merchants within Anne Arundel County (operators of bathing beaches and amusement parks et cetera) to sell merchandise customarily sold at these places while forbidding its sale by other vendors of this merchandise." 81 S.Ct. at 1106. The Court wrote:

"Here again, it would seem that a legislature could reasonably find that these commodities, necessary for the health and recreation of its citizens, should only be sold on Sunday by those vendors at the locations where the commodities are most likely to be immediately put to use. Such a determination would seem to serve the consuming public and at the same time secure Sunday rest for those employees, like appellants, of all other retail establishments. In addition, the enforcement problems which would accrue if *large retail establishments*, like appellants' employer, were permitted to

drink or fresh fruit; that those who go to the beach may wish ice cream or some other item normally sold there; that some people will prefer alcoholic beverages or games of chance to add to their relaxation; that newspapers and drug products should always be available to the public.

"... [T]he fact that these exemptions exist and deny some vendors and operators the day

of rest and recreation contemplated by the legislature does not render the statutes violative of equal protection since there would appear to be many valid reasons for these exemptions ...." 81 S.Ct. at 1105–06 (emphasis added).

10. *See* note 1, *supra* (heading to section 51:194 bears title of "Sunday sale of certain consumer goods prohibited").

remain open on Sunday but were restricted to the sale of the merchandise in question would be far greater than the problems accruing if only beach and amusement park vendors were exempted." 81 S.Ct. at 1106 (emphasis added). *See also Woonsocket Prescription Center, Inc. v. Michaelson,* 417 F.Supp. 1250, 1259 (D.R.I.1976) ("The decisions considering a blanket exemption for retail establishments on the basis of their small size have uniformly upheld the distinction as a reasonable classification in furtherance of the overall goals of Sunday closing laws."). The size and location distinctions drawn by the Louisiana Legislature to cover Sunday sales in the historical section of Baton Rouge are valid for the same reasons cited by the *McGowan* Court. The State Legislature could reasonably distinguish between stores occupying a space of 1,500 square feet or less and larger stores on the ground that it would be less difficult to supervise sales activity in the exempted stores, and that larger stores would generate an undesirable concentration of traffic and commercial activity. *See Michaelson, supra.* Moreover, like the Maryland beach and amusement park exemptions, Louisiana's geographic exemptions extend to famous touristical, historical, and recreational areas; the exemptions therefore serve the State purpose of providing recreation to the population. La.Rev.Stat.Ann. §§ 51:194 E(3), 51:194 E(5)–(6) (exempting sale of certain items in "the Vieux Carre section [French Quarter] of the city of New Orleans," in certain stores not exceeding 1,500 square feet in area in the "historical district" of Baton Rouge, and in the area of the "New Orleans Exhibition Hall").

We conclude that section 51:194 bears a rational relationship to the State objective of promoting the health, recreation, and welfare of the populace by providing a uniform day of rest. We also find that the exceptions to the statute are either justified by such need as the Legislature could have found or involve matters that the Supreme Court has indicated should be left to legislative discretion. The distinctions drawn by the Louisiana Legislature certainly are no more arbitrary than those made by the Maryland Legislature and upheld in *McGowan.*

## SELECTIVE ENFORCEMENT

■ Appellees also challenged section 51:194 on the ground that the Attorney General had attempted to enforce the statute in a selective and discriminatory manner, in violation of the equal protection clause of the fourteenth amendment. The district court sustained this challenge to the statute. 589 F.Supp. at 1264, 1266. We agree with appellant that Home Depot and Gaylord's have failed to satisfy their burden under the selective prosecution test.

In *United States v. Greene,* 697 F.2d 1229 (5th Cir.), *cert. denied,* 463 U.S. 1210, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983), we wrote that "the decision to prosecute one person rather than another is one left to executive discretion," and that courts consequently "are both reluctant and restricted in any review of prosecutorial decisions." 697 F.2d at 1235. Although we declined to adopt the "no-review" rule, whereby the "decision to prosecute is simply not reviewable," 697 F.2d at 1235, we imposed a substantial burden on those who challenge the manner in which prosecutorial discretion is exercised, adopting the following test:

> "To prevail on a selective prosecution challenge, a defendant must first make a *prima facie* showing that he has been singled out for prosecution while others similarly situated and committing the same acts have not.... If a defendant meets this first showing, he must then demonstrate that the government's discriminatory selection of him for prosecution has been invidious or in bad faith in that it rests upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." 697 F.2d at 1234 (citations omitted).

*See United States v. Hoover,* 727 F.2d 387, 389 (5th Cir.1984) (applying test). We wrote that if a defendant satisfies both

prongs, the burden then shifts to the government to demonstrate that it had a legitimate basis for selecting the defendant for prosecution. *Greene,* 697 F.2d at 1235; *Hoover,* 727 F.2d at 389. With reference to the second part of the "selective prosecution test," *Greene* noted that defendants "bear a very heavy burden in demonstrating invidious purpose which invades or overrides that prosecutorial discretion," and that the "mere exercise of some selectivity by the government in instituting prosecutions is not itself a constitutional violation." 697 F.2d at 1234–35.

Home Depot and Gaylord's may have made the necessary *prima facie* showing that they were singled out for enforcement while similarly situated stores were not. Appellant does not dispute their argument that other stores openly violate the Louisiana Sunday Closing Laws and yet have not been subjected to prosecution or enforcement attempts. However, we find that appellees have failed to satisfy their burden under the second part of the selective prosecution test. Appellees acknowledge that the Attorney General follows a policy of not prosecuting violators of the Sunday Closing Laws unless he first receives a complaint against the offending store, supported by an affidavit and proof of purchase of prohibited items. This policy does not involve invidious discrimination or bad faith since the decisions to prosecute are not based on such impermissible considerations as race or religion, or the desire to stifle the exercise of constitutional rights. The selective prosecution cases cited by appellees are distinguishable for this very reason. Appellees cite to *Hernandez v. Texas,* 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954), and *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), to support their argument that the Sunday Closing Laws, as selectively enforced, violate equal protection. Among other distinguishing factors, however, the *Hernandez* and *Yick Wo* cases involved allegations of discrimination based on race and national origin, neither of which is alleged in the instant case. *See Hernandez,* 74 S.Ct. at 669–70; *Yick Wo,* 6 S.Ct. at 1066; *see also*

*United States v. Brookshire,* 514 F.2d 786, 788 (10th Cir.1975) (distinguishing *Yick Wo,* in a case involving an allegation of selective prosecution, on ground that statute at issue "makes no invidious discrimination"). We reject the selective prosecution attack.

## VAGUENESS

Appellees challenged section 51:194 on the additional ground that it is impermissibly vague on its face; in violation of the due process clause of the fourteenth amendment. Again, we find that the district court erred in sustaining this challenge to the statute.

The void-for-vagueness doctrine requires that a penal statute define a criminal offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983); *Village of Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 71 L.Ed.2d 362, 102 S.Ct. 1186, 1195–96 (1982); *Tobacco Accessories & Novelty Craftsmen Merchants Ass'n of La. v. Treen,* 681 F.2d 378, 382 (5th Cir. 1982). In *Hoffman Estates,* however, the Supreme Court added that a court should sustain a *facial* challenge to the vagueness of a law

"*only* if the enactment is impermissibly vague in *all* of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law." 102 S.Ct. at 1191 (footnote omitted and emphasis added; reversing Court of Appeals since it had determined nothing more than that the ordinance was "unclear in *some* [emphasis in original] of its applications").

*See also Ferguson v. Estelle,* 718 F.2d 730, 732 n. 3 (5th Cir.1983) (per curiam) (ad-

dressing a challenge to a criminal statute on the ground that it was facially vague, and stating, " 'A "facial challenge," in this context, means a claim that the law is "invalid in toto—and therefore incapable of *any* application" ' " (quoting *Hoffman Estates*, 102 S.Ct. at 1192; emphasis added)); *High Ol' Times, Inc. v. Busbee*, 673 F.2d 1225, 1228 (11th Cir.1982) (addressing a similar facial challenge to a criminal statute, and stating, "A statute is facially vague in violation of due process only when the law is impermissibly vague in all of its applications"); *United States v. Jordan*, 747 F.2d 1120, 1131 n. 13 (7th Cir.1984) (noting that a criminal statute was not vague in all of its applications, and stating, "However, 'a "facial" challenge ... means a claim that the law is "invalid *in toto*—and therefore incapable of any valid application" ' " (quoting *Hoffman Estates*, 102 S.Ct. at 1191 n. 5)). Moreover, the *Hoffman Estates* Court stated:

> "The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify

the meaning of the regulation by its own inquiry, or by resort to an administrative process." 102 S.Ct. at 1183 (footnotes omitted).

*See also Tobacco Accessories*, 681 F.2d at 382 (quoting *Hoffman Estates* ); *West Virginia Mfrs. Ass'n v. West Virginia*, 714 F.2d 308, 314 (4th Cir.1983) (Although an enactment imposing criminal penalties must clearly define the proscribed acts, "[i]t is likewise clear ... that '[t]he degree of vagueness that the Constitution tolerates ... depend[s] in part on the nature of the enactment[,]' ... and that with respect to 'regulatory statutes governing business activities, greater leeway is allowed.' " (Citation omitted)).

In the instant case, we find that numerous items clearly fall within the categories of products that cannot be sold on Sunday. Because the statute is not impermissibly vague in "all of its applications," we reject appellees' facial challenge to the statute.[11] Section 51:194 makes it unlawful to sell clothing or wearing apparel; lumber or building supply materials; furniture; home, business, or office furnishings; household, office, or business appliances; new or used automobiles and trucks, or parts for and servicing of such vehicles in all places of business wherein such vehicles are sold. Although appellees point out that some items are difficult to categorize and may or may not fall within the proscribed classes of products, we find that many other items, if not most products, are sus-

**11.** Appellees argue that *Hoffman Estates* is inapposite because the statute that was at issue in that case required scienter and involved only civil penalties. The *Hoffman Estates* Court, though, wrote:

> "The ordinance *nominally* imposes only civil penalties. However, the village concedes that the ordinance is 'quasi-criminal,' and its prohibitory and stigmatizing effect may warrant a relatively strict test. Flipside's facial challenge fails because, *under the test appropriate to either a quasi-criminal or a criminal law,* the ordinance is sufficiently clear *as applied to Flipside."* 102 S.Ct. at 1194 (emphasis added).

Although the Court did observe that it "has *also* expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively

less severe," 102 S.Ct. at 1193 (emphasis added), the Court made this observation independently of its statement that economic regulations themselves are to be subjected to a more lax vagueness test. Moreover, the fact that a statute imposes criminal penalties in no way changes the rule that a statute challenged as *facially* vague must be vague in *all* its applications before it will be held unconstitutional, regardless of the strictness of the vagueness standard applied. *See Ferguson v. Estelle,* 718 F.2d 730, 732 n. 3 (5th Cir.1983) (per curiam) (the rule that a facial challenge must demonstrate vagueness in *all* applications is applied to a facial challenge to a criminal statute); *High Ol' Times, Inc. v. Busbee,* 673 F.2d 1225, 1228 (11th Cir.1982) (same); *United States v. Jordan,* 747 F.2d 1120, 1131 n. 13 (7th Cir.1984) (same).

ceptible to categorization under or exclusion from the statute, even without resort to the lax vagueness standard applicable to statutes regulating economic activity. Shirts, pants, dresses, and blouses obviously are clothing, just as tables and chairs are furniture, and refrigerators are business, office or household appliances; there is no mystery in what constitutes a new or used automobile or truck, or in ascertaining that a set of curtains are home, business or office furnishings, or in recognizing that lumber is being sold. The statute is not void for vagueness on its face.

We also observe in this connection that appellees' vagueness claim is and has consistently been ultimately cast as a broadside challenge to section 51:194 as a whole and in its entirety. The only relevant relief appellees sought was declaratory judgment "that LSA–R.S. 51:194" and "any attempt" to enforce it against them "is unconstitutional," and an injunction prohibiting the enforcement of "the provisions of LSA–R.S. 51:194" to "in any way interfere with the sale, attempt to sell or offer to sell *any product* on a Sunday" by appellees (emphasis added). That was the relief granted by the district court, which enjoined enforcement of "the provisions of LSA–R.S. 51:194 ... to ... in any way interfere with the sale, attempt to sell or offer to sell *any product* on a Sunday by" appellees (emphasis added). As we have stated, there are numerous products whose coverage or exclusion from section 51:194 is not even arguably unclear. Accordingly, we do not consider ourselves here called upon to pass judgment on the vagueness *vel non* of the application of section 51:194 to every particular product imaginable. It suffices here that there is patently a substantial core of products as to which section 51:194 is not impermissibly vague. And, of course, we do not suggest that appellees or their employees may not successfully resist a given criminal prosecution for a specific sale or sales on the ground that as applied to that specific sale of that particular product section 51:194 is unconstitutionally vague.

## CONCLUSION

Having concluded that appellees' challenges to the constitutionality of section 51:194 are without merit, we reverse the judgment of the district court granting a permanent injunction in their favor. *See Gallagher v. Crown Kosher Super Mkt. of Mass., Inc.,* 366 U.S. 617, 81 S.Ct. 1122, 1125, 1129, 6 L.Ed.2d 536 (1961) (plurality) (announcing judgment of Court that appellee grocery storeowner's challenges to the constitutionality of the Massachusetts Sunday closing law were without merit and reversing permanent injunction restraining enforcement of same).

The judgment of the district court is REVERSED and the cause is REMANDED for entry of judgment dismissing appellees' suit in accordance herewith.