REVISED, June 22, 1999

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-20709
_____

HARRIS COUNTY TEXAS,

                          Plaintiff-Appellee,

v.

CARMAX AUTO SUPERSTORES INC,

                          Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

May 26, 1999

Before KING, Chief Judge, and JOLLY and JONES, Circuit Judges.

KING, Chief Judge:

    Defendant-appellant CarMax Auto Superstores, Inc. appeals
the district court's grant of a preliminary injunction
prohibiting it from selling or offering for sale motor vehicles
on consecutive days of Saturday and Sunday on the premises of its
stores in plaintiff-appellee Harris County, Texas in violation of
Texas Transportation Code § 728.002.  We find that Harris County
is not bound by a prior state court injunction purporting to
enjoin all enforcement of the statute and that, therefore, the
district court's injunction does not implicate the Anti-
Injunction Act, 28 U.S.C. § 2283.  In addition, we conclude that
the district court properly exercised jurisdiction over this

action, that Harris County demonstrated a substantial likelihood of success on the merits, and that the issuance of the injunction did not violate Federal Rule of Civil Procedure 65(a)(1). Accordingly, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This procedurally tangled case concerns Chapter 728 of the Texas Transportation Code (the Blue Law) and the voluminous state and federal litigation brought both to enforce and challenge it. Section 728.002(a) provides: "A person may not, on consecutive days of Saturday and Sunday: (1) sell or offer for sale a motor vehicle; or (2) compel an employee to sell or offer for sale a motor vehicle." TEX. TRANSP. CODE ANN. § 728.002(a). Section 728.004 provides that the operation of a business in a manner contrary to this statute is a public nuisance and that the attorney general or a district, county, or municipal attorney may obtain an injunction restraining such a violation. See id. § 728.004(a)-(b).

In 1997, the El Paso Independent Automobile Dealers Association, Inc. (EPIADA), an organization of small car dealers, brought an action in state district court in El Paso, Texas to challenge the constitutionality of the Blue Law, naming the district and county attorneys of El Paso County and the city attorney of El Paso as defendants. In accordance with state law, a copy of EPIADA's petition was also served upon the attorney

general of Texas, see TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(b),[1] who expressly declined to participate in the suit.

After an evidentiary hearing, the El Paso district court determined that the classifications drawn in the Blue Law were not rationally related to the state legislature's stated purpose and operated in an arbitrary and unjust manner by regulating only weekend sales of motor vehicles without any restrictions whatsoever on sales of such items as liquor, cigarettes, table dances, and lottery tickets. See El Paso Indep. Auto. Dealers Ass'n, Inc. v. Esparza, No. 97-3425, slip op. at 6 (383rd Dist. Ct., El Paso County, Tex. Dec. 23, 1997) (findings of fact and conclusions of law). Specifically, the court held:

- TEX. TRANS. CODE §§ 728.001 through 728.004 are hereby declared unconstitutional;

- All officials authorized by TEX. TRANS. CODE § 728.004 to enforce TEX. TRANS. CODE §§ 728.001 through 728.004 are hereby permanently enjoined from enforcing the

---

[1] That statute provides:

In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party and is entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard.

TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(b). Although this provision could be read to apply only to constitutional challenges to a municipal ordinance, as opposed to a state statute such as the Blue Law, it in fact pertains to such attacks on the latter as well. See Moore v. Morales, 63 F.3d 358, 360-61 (5th Cir. 1995) ("[B]y statute, the State of Texas requires that, when the constitutionality of one of its laws is challenged, 'the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard'. Tex.Civ.Prac. & Rem. Code § 37.006(b) . . . .").

3

provisions of TEX. TRANS. CODE §§ 728.001 through 728.004 unless the Texas Supreme Court shall subsequently rule that the statutes are constitutional.

El Paso Indep. Auto. Dealers Ass'n, Inc. v. Esparza, No. 97-3425, slip op. at 1-2 (383rd Dist. Ct., El Paso County, Tex. Dec. 23, 1997) (judgment).  In response, the attorney general and the Motor Vehicle Division of the Texas Department of Transportation filed a petition for a writ of mandamus with the state court of appeals in El Paso to set aside the district court's order; the court denied the petition.  See In re Attorney Gen., No. 08-98-00021-CV (Tex. App.--El Paso Jan. 28, 1998, orig. proceeding).  The attorney general and the Motor Vehicle Division then sought to appeal the district court decision.  EPIADA filed a motion to dismiss, alleging that since they were not parties of record in the underlying lawsuit, they had no right of appeal.  The state court of appeals held that while the attorney general and the Motor Vehicle Division were entitled to appeal because they were virtually represented by the El Paso officials, they had waived that right by specifically declining to participate in the case.  See Attorney Gen. v. El Paso Indep. Auto. Dealers Ass'n, Inc., 966 S.W.2d 783, 785-86 (Tex. App.--El Paso 1998, no writ).  All appeals from the El Paso district court judgment and injunction have since been dismissed.

In May 1998, after the El Paso court of appeals decision stating that the attorney general had waived his right to appeal, defendant-appellant CarMax Auto Superstores, Inc. (CarMax) informed plaintiff-appellee Harris County, Texas (Harris County

4

or the County) that it intended to keep its three Houston-area locations open on both weekend days. On July 1, 1998, Harris County filed a state court application for a temporary restraining order, temporary injunction, and permanent injunction barring CarMax from violating the Blue Law.[2] In its answer, CarMax conceded that during two weekends in June 1998, one of its Harris County stores sold or offered for sale motor vehicles on consecutive days of Saturday and Sunday and indicated that it intended to continue doing so. Before the court could rule, however, CarMax removed the case to the United States District Court for the Southern District of Texas on the basis of diversity of citizenship. On July 22, 1998, Harris County filed a first amended complaint and application for temporary restraining order and injunctive relief in federal court. The district court held a two-hour hearing on July 27, 1998 and on July 31, 1998 granted an injunction ordering CarMax to "cease and desist from selling and offering for sale motor vehicles on

---

[2] At the time, as it is today, CarMax was also involved in Blue Law litigation in the Northern District of Texas. In January 1998, CarMax filed suit there challenging the Blue Law's constitutionality under both the state and federal constitutions. On June 10, 1998, Nichols Ford and the Texas Auto Dealers Association (TADA) filed a state action in Dallas against CarMax seeking to enforce the Blue Law. CarMax removed the suit to federal court, and it was transferred to the judge handling CarMax's case in the Northern District of Texas. On June 25, 1998, Prestige Ford also filed an action in state court in Dallas seeking to enforce the statute. CarMax removed the case to federal court, where the district judge denied Prestige's application for a temporary restraining order barring violations of the Blue Law. Prestige Ford then filed a motion for voluntary dismissal of its action. Later, CarMax joined both the Dallas and Harris County enforcement officials to the remaining litigation pending in the Northern District of Texas.

consecutive days of Saturday and Sunday on the premises of its three automobile dealership outlets located . . . in Harris County" from the date of the order until final judgment on the merits.  CarMax appealed.[3]

## II.  STANDARD OF REVIEW

Any injunctive relief is considered "an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." White v. Carlucci, 862 F.2d 1209, 1211 (5th Cir. 1989) (quoting Holland Am. Ins. Co. v. Succession of Roy, 777 F.2d 992, 997 (5th

---

[3]  In addition, CarMax returned to the El Paso district court and filed an action naming the state of Texas and its attorney general, the Texas Department of Transportation, and the director of the Motor Vehicle Board as defendants.  On August 20, 1998, that court issued a temporary restraining order prohibiting the defendants from acting in any way in violation of the court's prior judgment and injunction in El Paso Independent Automobile Dealers Ass'n, Inc. v. Esparza, No. 97-3425 (383rd Dist. Ct., El Paso County, Tex. Dec. 23, 1997) (judgment).  See CarMax Auto Superstores, Inc. v. State, No. 98-2879, slip op. at 3 (383rd Dist. Ct., El Paso County, Tex. Aug. 20, 1998) (order granting temporary restraining order).  Two months later, the court granted a preliminary injunction ordering that

> the State of Texas, the Honorable Dan Morales in his official capacity as Attorney General of Texas, the Texas Department of Transportation, and Brett Bray in his official capacity as Director of the Motor Vehicle Division are commanded forthwith to desist and refrain from attempting to enforce the provisions of TEX. TRANSP. CODE §§ 728.001 through 728.004, individually and collectively, by themselves or through their agents, representatives, administrative agencies, political subdivisions and/or privies until judgment in this cause is rendered by this Court or the Texas Supreme Court reverses the decision of this court in Cause No. 97-4325.

Carmax Auto Superstores, Inc. v. State, No. 98-2879, slip op. at 2-3 (383rd Dist. Ct., El Paso County, Tex. Oct. 15, 1998) (order granting preliminary injunction).

Cir. 1985)).  A district court may grant a preliminary injunction only if the movant establishes four requirements:

> First, the movant must establish a substantial likelihood of success on the merits.  Second, there must be a substantial threat of irreparable injury if the injunction is not granted.  Third, the threatened injury to the plaintiff must outweigh the threatened injury to the defendant.  Fourth, the granting of the preliminary injunction must not disserve the public interest.

Cherokee Pump & Equip., Inc. v. Aurora Pump, 38 F.3d 246, 249 (5th Cir. 1994) (citations omitted).  Each of these elements is a mixed question of fact and law; we review a district court's findings of fact under a clearly erroneous standard and its conclusions of law de novo.  See Hoover v. Morales, 164 F.3d 221, 224 (5th Cir. 1998) (quoting Sunbeam Prods., Inc. v. West Bend Co., 123 F.3d 246, 250 (5th Cir. 1997), cert. denied, 118 S. Ct. 1795 (1998)).  The ultimate issue, however, is whether the district court abused its discretion in granting the preliminary injunction.  See House the Homeless, Inc. v. Widnall, 94 F.3d 176, 180 (5th Cir. 1996).

### III.  DISCUSSION

On appeal, CarMax contends that the district court's preliminary injunction was an abuse of discretion for four reasons:  (1) The El Paso injunction binds not only the named defendants, but all officials authorized to enforce the Blue Law, including the Harris County Attorney, and the federal injunction therefore interferes with the effect of a state court injunction

7

in violation of the Anti-Injunction Act, 28 U.S.C. § 2283;[4] (2) the district court erred in exercising jurisdiction over the action because prior, duplicative litigation was pending in the Northern District of Texas; (3) Harris County failed to establish a substantial likelihood of success on the merits; and (4) the district court issued the preliminary injunction in violation of Federal Rule of Civil Procedure 65(a)(1).  We address each of these arguments in turn.

## A.  Does the federal preliminary injunction violate the Anti-Injunction Act?

Our first task is to determine whether the district court's preliminary injunction violates the Anti-Injunction Act, which prohibits federal courts from granting injunctions "to stay proceedings in a State court."  28 U.S.C. § 2283.  The Supreme Court has interpreted the Act to forbid federal injunctions "prohibiting utilization of the results of a completed state proceeding."  Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs, 398 U.S. 281, 287 (1970).  That is, a federal court may not issue an injunction countermanding a state court injunction.  See id. at 283-85 (vacating a federal injunction that enjoined a railroad from invoking a state court injunction banning union picketing of a switching yard).  Thus, in this case, if the El Paso injunction binds Harris County, restraining

---

[4] "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.

it from enforcing the Blue Law, then the federal injunction arguably prevents the use of a state court injunction and violates the Anti-Injunction Act. If, on the other hand, the El Paso injunction does not apply to Harris County, then the federal injunction in no way conflicts with a state court injunction and does not implicate the Act at all.

The crucial question, then, is whether the El Paso injunction binds Harris County and its officials. There is no question that it purports to do so: By its own terms, the injunction applies to "[a]ll officials authorized by TEX. TRANS. CODE § 728.004 to enforce TEX. TRANS. CODE §§ 728.001 through 728.004," a group consisting of "[t]he attorney general or a district, county, or municipal attorney," TEX. TRANSP. CODE ANN. § 728.004(a). CarMax urges us to take the injunction at face value, while Harris County maintains that it does not bind the County or any of its officials.

We begin with Texas Rule of Civil Procedure 683, which provides that "[e]very order granting an injunction . . . is binding only on the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." The Texas Supreme Court has stated that this rule means

> [a] decree of injunction not only binds the parties defendant but also those identified with them in interest, in "privity" with them, represented by them or subject to their control. In essence it is that defendants may not nullify a decree by carrying out prohibited acts through

9

> aiders and abettors, although they were not parties to the
> original proceeding.

Ex parte Chambers, 898 S.W.2d 257, 260 n.2 (Tex. 1995) (quoting

Waffenschmidt v. Mackay, 763 F.2d 711, 717 (5th Cir. 1985)); see

Regal Knitwear Co. v. National Labor Relations Bd., 324 U.S. 9,

14 (1945) (stating the same with respect to Federal Rule of Civil

Procedure 65(d)).[5]

It is apparent that neither Harris County nor any of its

officials was a party to the El Paso district court action. They

were not named as defendants and, in fact, had no knowledge of

the El Paso lawsuit. The fact that the final judgment and

permanent injunction purports to bind them does not confer party

status, which "cannot be created at entry of judgment where none

existed before by the mere inclusion of a person or entity in a

judgment." Subsequent Injury Fund v. Service Lloyds Ins. Co.,

961 S.W.2d 673, 677 (Tex. App.--Houston [1st Dist.] 1998, writ

denied).

Nor are Harris County and its county attorney officers,

agents, servants, employees, or attorneys of the El Paso

district, county, or city attorneys. Rather, the officials of

each county have parallel responsibilities within their own

---

[5] Federal Rule of Civil Procedure 65(d) provides that "[e]very order granting an injunction . . . is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." The Texas Supreme Court has described Texas Rule of Civil Procedure 683 as having been taken from this rule. See Ex parte Davis, 470 S.W.2d 647, 649 (Tex. 1971).

county.  <u>Compare</u> TEX. GOV'T CODE ANN. § 45.171(a) ("It is the primary duty of the county attorney in El Paso County or his assistants to represent the state, El Paso County, and the officials of El Paso County in all civil matters pending before the courts of El Paso County and any other courts in which the state, the county, or the officials of the county have matters pending."), <u>with</u> <u>id.</u> § 45.201 ("It is the primary duty of the county attorney in Harris County or his assistants to represent the state, Harris County, and the officials of Harris County in all civil matters pending before the courts of Harris County and any other courts in which the state, the county, or the officials of the county have matters pending.").

Thus, if the El Paso injunction binds the County and its officials, it must do so under one of the theories recognized in Rule 683 or by the Supreme Court in <u>Chambers</u>.  That is, the County is bound if it is in active concert or participation with the El Paso officials, identified with them in interest, in privity with them, represented by them, or subject to their control.  The many different terms employed by the courts boil down to the fundamental principle that an injunction does not bind a non-party unless he stands in a special relationship to a party.  Discussing Federal Rule of Civil Procedure 65(d), one commentator has written that "[a]lthough the rule itself does not speak of 'privity,' the concept frequently is used by the federal courts as <u>synonymous with the enumeration in Rule 65(d) of nonparties who may be bound</u>."  11A CHARLES ALAN WRIGHT ET AL., FEDERAL

11

PRACTICE AND PROCEDURE § 2956, at 340 (1995) (emphasis added). The general concept is that an injunction binds only non-parties who are "so identified in interest with those named in the decree that it would be reasonable to conclude that their rights and interests have been represented and adjudicated in the original injunction proceeding." Id. at 340-41. In other words, the non-party must have constructively had his day in court:

> The central reason that one who is not a party to the action in which the injunction was issued cannot be bound by it is that he has not had his day in court with respect to the validity of the injunction. Absent an opportunity to contest liability, his knowledge of the injunction is not sufficient to bind him as an individual, as distinguished from prohibiting him from acting in the forbidden way on behalf of the enjoined party. Thus, the relevant inquiry is not merely whether (in addition to having knowledge of the injunction) [the person putatively bound] was a "key employee" of [the bound party] but whether he had such a key role in the corporation's participation in the injunction proceedings that it can be fairly said that he has had his day in court in relation to the validity of the injunction.

G. & C. Merriam Co. v. Webster Dictionary Co., 639 F.2d 29, 37 (1st Cir. 1980) (citations omitted) (second emphasis added).

According to CarMax, the El Paso court of appeals has already found that the attorney general of Texas and all district, county, and city attorneys in the state were in privity with and virtually represented by the El Paso officials and, therefore, were bound by the injunction. See Attorney Gen., 966 S.W.2d at 785. That case, however, held no such thing. Rather, it considered only one issue: whether the attorney general of Texas and the Motor Vehicle Division of the Texas Department of Transportation could appeal the El Paso injunction. The court first noted that while as a general rule, only parties of record

12

may exercise a right of appeal, a party who was not present in the trial court and who wishes to participate in the appeal may do so under the doctrine of virtual representation.  See id. Although the El Paso appeals court determined that the El Paso officials virtually represented the attorney general and the Motor Vehicle Division, it did not consider whether the El Paso injunction binds any entity other than the attorney general, the Motor Vehicle Division, and the named defendants in the trial court.  In order to answer that question, we must examine the relationship between the Harris County Attorney and his El Paso counterparts.

The Supreme Court of Texas has stated that a person is "in active concert or participation" with a named party if he participated in the original proceeding and was a real party in interest when the decree was rendered.  See Ex parte Davis, 470 S.W.2d 647, 649 (Tex. 1971).  The Texas cases finding such a relationship, the Davis court asserted, "all contain some evidence of involvement with the named enjoined party or involvement in the original injunctive proceeding."  Id.  In Ex parte Foster, 188 S.W.2d 382, 383-84 (Tex. 1945), for example, the court held that a non-party was bound by an injunction because he had a "vital interest" in the subject matter and the outcome of the injunction proceedings, knew about the injunction suit, employed an attorney to "go to the courthouse and 'watch the lawsuit,'" was present at the injunction hearing, and had numerous conversations with the parties about the injunction.

13

The Foster court concluded that "by virtue of his knowledge of and interest in the subject matter of the litigation" and "his participation in the proceedings therein," the non-party was bound by the injunction.  Id. at 384.

In this case, however, the non-party was not involved with the litigation of the injunction at all.  The record clearly demonstrates that EPIADA, the plaintiff in the El Paso case, never served Harris County with citation.  There is no evidence that Harris County authorities had any knowledge of the El Paso lawsuit until after the state trial court rendered judgment and issued a permanent injunction.  Neither the County nor any of its officials participated in any way in the El Paso proceedings.  In State v. Cook United, Inc., 469 S.W.2d 709 (Tex. 1971), the Texas Supreme Court found under very similar circumstances that an injunction should be limited to the parties of record.  In Cook United, the state of Texas itself, by and through the criminal district attorney of Tarrant County, filed four lawsuits seeking injunctive relief against Cook United under the Sunday closing law in effect at the time.  See id. at 710.  By way of cross-action, Cook United sought and obtained a temporary injunction enjoining the state, its attorney general, all district and county attorneys in the state, their agents and employees, and Tarrant and McLennan Counties from filing any more enforcement actions.  See id.  The Texas Supreme Court modified the injunction to apply only to the district attorneys of Tarrant and McLennan Counties.  See id. at 712.  The court first noted that

14

"no persons other than representatives or public officials of Tarrant and McLennan Counties were served with citation or notice of hearing" upon Cook United's cross-action and that Texas Rule of Civil Procedure 681 provides that "[n]o temporary injunction shall be issued without notice to the adverse party." Id. It then reasoned:

> In the absence of notice to or service of citation upon the Attorney General of the State of Texas, or county and district attorneys other than those of Tarrant and McLennan Counties the temporary injunction is hereby modified to enjoin only the county and district attorneys of Tarrant and McLennan Counties, and shall have no effect on the Attorney General of the State of Texas or the other district and county attorneys in this State.
> We do not agree with the Respondent's contention that Article 1926-42, Vernon's Texas Civil Statutes, makes the criminal District Attorney of Tarrant County the agent of the State of Texas or the Attorney General for the purposes of service of citation. Neither do we agree that the State of Texas and the Attorney General are properly enjoined by virtue of Rule 683, Texas Rules of Civil Procedure, in that they are not officers, agents, servants, employees or attorneys of the criminal District Attorney of Tarrant County. Moreover, not having served citation upon the State or Attorney General, Respondent cannot validly contend that the other county and district attorneys throughout the State would be bound by this temporary injunction under Rule 683, Texas Rules of Civil Procedure.

Id. Thus, even where the state is a plaintiff--in Cook United, the state brought suit by and through one of its district attorneys--its attorney general is not bound in the absence of service or pre-hearing notice. This suggests that service, or at least notice, must be afforded an entity for that entity to be bound. In the El Paso suit, Harris County received neither service nor notice and was not a plaintiff that could be charged

15

with knowledge of the action.  Thus, it appears, the El Paso injunction has no effect on Harris County.[6]

We next consider the law of privity and virtual representation.  While it is well-established under Texas law that a non-party who is in privity with or virtually represented by a party to a lawsuit is bound by the judgment therein, see Benson v. Wanda Petroleum Co., 468 S.W.2d 361, 363-64 (Tex. 1971), the definitions of each concept and the distinctions between them are not as clear.  Indeed, the Texas Supreme Court has acknowledged that "there is no generally prevailing definition of privity which can be automatically applied to all cases involving the doctrine of res judicata and the determination of who are privies requires careful examination into the circumstances of each case as it arises."  Benson, 468 S.W.2d at 363; see Getty Oil Co. v. Insurance Co. of N. Am., 845

_____

[6]  At first glance, Cook United would seem to run counter to the principle enunciated by the United States Supreme Court in Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 402-03 (1940), that "[t]here is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government."  But by its own terms, this statement applies only when the non-governmental party is the same in both suits, which is clearly not the case here.  Even if "privity" between officers of the same government exists when the private parties are different, Sunshine Anthracite Coal involved a government officer (the Commissioner of Internal Revenue) who was essentially the agent of the coal company's opponent in the earlier case (the governmental body that found the company liable for the tax at issue).  Once again, that situation does not exist here.  Finally, except insofar as the Due Process Clause of the federal constitution may be implicated, the question of whether the El Paso injunction binds Harris County is a matter of state law on which the Texas Supreme Court, not the United States Supreme Court, is the ultimate authority.

16

S.W.2d 794, 800 (Tex. 1992).  Nevertheless, the courts have distilled some general principles.  First, "privity is not established by the mere fact that persons may be interested in the same question or in proving the same state of facts." Benson, 468 S.W.2d at 363.  More specifically, the Texas Supreme Court has also stated that "privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right," id., a definition that includes those who control an action although not a party to it, those whose interests are represented by a party to the action, and successors in interest, see Amstadt v. United States Brass Corp., 919 S.W.2d 644, 653 (Tex. 1996).[7]  The definition of virtual representation is somewhat more straightforward: "The test in determining whether a person is covered by the doctrine of virtual representation is whether that person is bound by the judgment of the trial court by virtue of the fact that he or she was 'represented' by a party to the original suit."  Subsequent Injury Fund, 961 S.W.2d at 677 (citing California & Hawaiian Sugar Co. v. Bunge Corp., 593 S.W.2d 739, 740 (Tex. Civ. App.--

_____

[7]  Several judicial definitions of privity have focused on property rights; for example, the Subsequent Injury Fund court said that "[p]rivity is generally defined as a mutual or successive relationship to the same rights in property," 919 S.W.2d at 653 (emphasis added), and that "[a]ll persons are privy to a judgment whose succession to the rights of property therein adjudicated are derived through or under one or the other of the parties to the action and which accrued after the commencement of the action," id. (emphasis added).  These definitions are not relevant to this case.

Houston [1st Dist.] 1979, writ ref'd n.r.e.)); see Avila v. St. Luke's Lutheran Hosp., 948 S.W.2d 841, 855 (Tex. App.--San Antonio 1997, writ denied). Because Harris County neither controlled the El Paso action nor was a successor in interest to the El Paso officials, it is a privy only if it was represented by them. Thus, our inquiry coalesces into a single issue: Was Harris County represented by the El Paso County officials?

In order for such representation to bind a non-party, it must amount to the non-party's "participat[ing] through adequate representation." Avila, 948 S.W.2d at 848; see id. at 855; cf. TEX. R. CIV. P. 683 (providing that an injunction binds only those non-parties who are in "active concert or participation with" a party); G. & C. Merriam Co., 639 F.2d at 37 ("The central reason that one who is not a party to the action in which the injunction was issued cannot be bound by it is that he has not had his day in court with respect to the validity of the injunction."). The record demonstrates that Harris County did not participate through actual and adequate representation. While the attorney general was given notice of the El Paso suit and expressly declined to appear on the grounds that "the real parties in interest were capable of adequately presenting the issues to the court," Harris County neither knew of nor participated in the suit. It is therefore not bound by the El Paso injunction. Cf. Avila, 948 S.W.2d at 855 ("Cristina's interests were neither represented nor protected in the former action. . . . [O]ne not before the court cannot be bound by any judgment entered.").

18

CarMax's final argument is that Harris County is in privity with or represented by the attorney general, see Attorney Gen., 966 S.W.2d at 785, and since the latter is bound by the injunction, Harris County is as well. CarMax makes much of Cook United's statement that "not having served citation upon the State or Attorney General, Respondent cannot validly contend that the other county and district attorneys throughout the State would be bound by this temporary injunction under Rule 683, Texas Rules of Civil Procedure," 469 S.W.2d at 712. According to CarMax, this indicates that if the attorney general is served, all district and county attorneys throughout the State of Texas are bound by a subsequent injunction. In this case, CarMax claims, the attorney general was served pursuant to Texas Civil Practice and Remedies Code § 37.006(b). We do not think that compliance with this statute constitutes "service" within the meaning of Cook United. That opinion draws a distinction between "notice to" and "service of citation upon" a potential party. Id. ("In the absence of notice to or service of citation upon the Attorney General of the State of Texas . . . the temporary injunction . . . shall have no effect on the Attorney General . . . .") (emphasis added). The El Paso district court's findings of fact indicate that while "[s]ervice of citation was made on the District Attorney for El Paso County, Texas; the County Attorney for El Paso County, Texas; and, the City Attorney for the City of El Paso, Texas[,] . . . . [N]otice of the petition was delivered to the Honorable Dan Morales, Attorney

19

General of the state of Texas." <u>El Paso Indep. Auto. Dealers</u> <u>Ass'n</u>, No. 97-3425, slip op. at 3-4 (findings of fact and conclusions of law); <u>cf.</u> <u>Lone Starr Multi Theatres, Inc. v.</u> <u>State</u>, 922 S.W.2d 295, 298 (Tex. App.--Austin 1996, no writ) (finding that Texas Civil Practice and Remedies Code § 37.006(b) requires that the attorney general be given notice of a suit to declare a statute unconstitutional, not that he actually be sued as a party in such an action). Thus, while the attorney general may have received <u>notice</u> in this case, he was not <u>served</u>, and CarMax therefore "cannot validly contend that the other county and district attorneys throughout the state would be bound . . . ." <u>Cook United</u>, 469 S.W.2d at 712.

But even assuming that the attorney general was, in fact, "served," as that term is used in <u>Cook United</u>, the sentence to which CarMax points provides only weak support for its argument. While it may imply that a plaintiff must "serve" the attorney general before he can even "validly contend" that all district and county attorneys are bound by the injunction, it does not take the further step of holding that such "service" upon the attorney general, without more, makes a judgment binding on all district and county attorneys. "Service," in the sense of mere delivery of a copy of the proceeding to the attorney general, does not necessarily mean that non-parties such as Harris County were actually and adequately represented so that they had a day in court with respect to the validity of the injunction. Indeed, while it may be true that a local law enforcement official is

20

bound when his interests are represented by the state attorney general, see American Libraries Ass'n v. Pataki, 969 F. Supp. 160, 163 (S.D.N.Y. 1997) (holding that an injunction against the governor and attorney general, where they actively defended the case, also would bind local district attorneys); American Booksellers Ass'n v. Webb, 590 F. Supp. 677, 693 (N.D. Ga. 1984) (concluding that subordinate law enforcement officials were bound by an injunction against the state attorney general, who, while not named as a party, was served with a copy of the proceeding and entered an appearance to argue in support of the challenged statute's constitutionality), that was not the case here. Unlike his counterparts in American Libraries Association and American Booksellers Association, the Texas attorney general, while served with a copy of the El Paso proceeding, chose not to appear to defend the constitutionality of the Blue Law. Nor did the attorney general necessarily speak for Harris County in allowing the El Paso officials to prosecute the El Paso litigation. We have previously held that the attorney general does not represent all district and county attorneys in the state when he makes decisions regarding the conduct of litigation. See Baker v. Wade, 769 F.2d 289, 291 (5th Cir. 1985) (allowing a Texas district attorney to appeal even after the attorney general declined to do so); see also League of United Latin American Citizens Council No. 4434 v. Clements, 999 F.2d 831, 841 n.7 (5th Cir. 1993) (en banc) (explaining that Baker means that in a suit challenging the constitutionality of a state statute, the

21

attorney general does not possess exclusive authority to choose whether the state's interests will be asserted on appeal and that another state official charged with the duty of enforcing a statute held unconstitutional could appeal the judgment even if the attorney general chose not to do so).[8]

We therefore conclude that the El Paso injunction does not bind Harris County and its officials because they were not parties to the El Paso lawsuit or officers, agents, servants, employees, or attorneys of, or in active concert or participation with, the parties to that action. Nor are Harris County and its officials in privity with or virtually represented by the El Paso district, county, and city attorneys, or by the attorney general of Texas, such that they are bound by the El Paso judgment. Because the County is subject to no state court injunction, the district court's preliminary injunction does not implicate the Anti-Injunction Act.

## B. Did the district court erroneously proceed notwithstanding prior, duplicative litigation in another district court?

CarMax also contends that the court below should not have exercised jurisdiction over Harris County's lawsuit because prior, duplicative litigation is pending in the Northern District

---

[8] In Baker and League of United Latin American Citizens, of course, the officials opposing the attorney general were bound by the trial court judgment. This does not mean, however, that such officials are automatically bound whenever the attorney general is bound. Rather, the district attorney in Baker was a member of a certified defendant class, and the Chief Justice of the Texas Supreme Court in League of United Latin American Citizens was a named defendant. We cite these cases only for the proposition that the attorney general does not speak for all officials authorized to enforce a state statute.

22

of Texas.  In support of its argument, CarMax points to West Gulf

Maritime Association v. ILA Deep Sea Local 24, 751 F.2d 721 (5th

Cir. 1985), in which we said:

> The federal courts long have recognized that the
> principle of comity requires federal district courts--courts
> of coordinate jurisdiction and equal rank--to exercise care
> to avoid interference with each other's affairs.  "As
> between federal district courts, . . . the general principle
> is to avoid duplicative litigation."  The concern manifestly
> is to avoid the waste of duplication, to avoid rulings which
> may trench upon the authority of sister courts, and to avoid
> piecemeal resolution of issues that call for a uniform
> result.  To avoid these ills, a district court may dismiss
> an action where the issues presented can be resolved in an
> earlier-filed action pending in another district court.  In
> particular, "[a] court may . . . in its discretion dismiss a
> declaratory judgment or injunctive suit if the same issue is
> pending in litigation elsewhere."

Id. at 728-29 (citations and footnote omitted).  Complete

identity of neither the parties nor of the lawsuit itself is

required for dismissal or transfer of a case filed subsequently

to an action with substantial overlap of substantive issues.  See

Save Power Ltd. v. Syntek Fin. Corp., 121 F.3d 947, 950-51 (5th

Cir. 1997).  But while a district court may dismiss an injunction

suit if duplicative litigation is pending in another

jurisdiction, it is not required to do so.  Indeed, we made clear

in West Gulf Maritime Association, as the Supreme Court did in

Abbott Laboratories v. Gardner, 387 U.S. 136, 155 (1967),

abrogated on other grounds, Califano v. Sanders, 430 U.S. 99

(1977), that such dismissal is committed to the district court's

discretion.

We do not think that the district court abused that

discretion in exercising jurisdiction over this case.  The Blue

Law requires that a suit to enforce it must be brought in the county in which the violation is alleged. See TEX. TRANSP. CODE § 728.004(a). The plaintiff here therefore properly sued in Harris County. While CarMax filed a motion to transfer venue to the Northern District of Texas, 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." It is not clear that this action could have been brought in the United States District Court for the Northern District of Texas, as the Blue Law authorizes suit only "in the county in which a violation is alleged," TEX. TRANSP. CODE § 728.004(a), and Harris County is not in the Northern District of Texas. Moreover, we find it doubtful that transfer would have been "[f]or the convenience of parties and witnesses." 28 U.S.C. § 1404(a). The plaintiff and the three CarMax stores whose activity was at issue are all located in Harris County. The County also alleged in its response to the motion to transfer, and CarMax did not contest, that the county attorney and the majority of witnesses reside in Harris County. In light of the fact that this case probably could not have been transferred to any other federal court and its strong ties to Harris County, we conclude that the district court did not abuse its discretion in exercising jurisdiction over it.

## C. Did Harris County establish a substantial likelihood of success on the merits?

24

As we observed above, a preliminary injunction is properly granted only if the movant establishes a substantial likelihood of success on the merits. See Cherokee Pump, 38 F.3d at 249. CarMax contends that the Blue Law is "no longer rationally related to the purpose behind [its] enactment," contravenes article III, § 56 of the Texas Constitution, is unconstitutionally vague, and violates the Commerce Clause of the United States Constitution.[9] We consider each of these claims in turn.

## 1. Rational Relationship

CarMax first contends that the Blue Law is not rationally related to the purposes behind its enactment. CarMax maintains that while the objective of earlier versions of the statute was to achieve a one-day surcease from commerce, and the legislature's current goal is to maximize consumer protection and

_____

[9] Unlike many retailers who have challenged similar statutes in the past, CarMax does not contend that the Blue Law violates the First Amendment's guarantee of freedom of religion. See U.S. CONST. amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."). The courts generally have rejected these First Amendment attacks. See, e.g., McGowan v. Maryland, 366 U.S. 420, 429-53 (1961) (finding that the Maryland Blue Law did not constitute an establishment of religion); Two Guys from Harrison-Allentown, Inc. v. McGinley, 366 U.S. 582, 592-98 (1961) (holding that the Pennsylvania Sunday closing law did not violate the Establishment Clause); Braunfeld v. Brown, 366 U.S. 599, 601-10 (1961) (plurality opinion) (concluding that Pennsylvania Sunday closing law did not violate Orthodox Jewish merchants' right to free exercise of their religion); Home Depot, Inc. v. Guste, 773 F.2d 616, 619 n.3 (5th Cir. 1985) (stating agreement with district court that Louisiana Sunday closing law did not violate First Amendment); Kirt v. Humphrey, 1997 WL 561249, at *3-*5 (Minn. Ct. App. Sept. 9, 1997) (unpublished opinion) (concluding that Minnesota law banning the sale of motor vehicles on Sunday did not violate the First Amendment).

the health, safety, and welfare of the people of Texas, modern Texans do not now recognize either Saturday or Sunday as a day of cessation from commercial activities, and the Blue Law in no way benefits them.  The district court rejected CarMax's constitutional challenge, concluding that "[i]n view of the long and consistent affirmance of the constitutionality of such statutes, and in the absence of any distinguishing arguments with respect to the instant statute, it is evident that the County Attorney of Harris County has a substantial likelihood of prevailing on the merits."  In addition, it stated, the evidence presented at the preliminary injunction hearing contained "ample public policy reasons for retaining the Saturday or Sunday closing requirement as to automobile dealers."

Laws forbidding certain forms of commerce on given days of the week have a long history in this country.  In McGowan v. Maryland, 366 U.S. 420, 422 (1961), the Supreme Court considered a constitutional challenge to a state statute proscribing all labor, business, and other commercial activities, with certain limited exceptions, on Sunday.  The appellants argued that the Maryland law violated the Fourteenth Amendment's Equal Protection Clause because, among other things, the classifications regarding what commodities could or could not be sold on Sunday were "without rational and substantial relation to the object of the legislation."  Id. at 425.  The Court first stated the standard for evaluating such an equal protection challenge:

> The standards under which this proposition is to be evaluated have been set forth many times by this Court.

26

> Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

Id. at 426. The Court then found that there was a reasonable basis for the specific exemptions from the general ban on Sunday commerce at issue in the case. It noted that the purpose of the law was to provide a uniform day of rest for all citizens, see id. at 445, and concluded that such exceptions as soft drinks, fruit, ice cream, gasoline, alcoholic beverages, and games of chance could enhance "the recreational atmosphere of the day," while medication and newspapers "should always be available to the public." Id.

Similarly, in Two Guys from Harrison-Allentown, Inc. v. McGinley, 366 U.S. 582, 589-92 (1961), a case decided the same day as McGowan, the Court faced an equal protection challenge to a Pennsylvania statute that imposed a heavier penalty for the Sunday sale of certain commodities than for others. The court below had made a factual finding that the goods subject to the higher fine were the kinds of merchandise sold in large suburban department stores for which a small fine was not a deterrent. See id. at 590. The Supreme Court held that the state legislature reasonably could have concluded "that these businesses were particularly disrupting the intended atmosphere

27

of the day because of the great volume of motor traffic attracted, the danger of their competitors also opening on Sunday, and their large number of employees." Id. at 591.

> "Evils in the same field may be of different dimensions and proportions, requiring different remedies. . . . Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. . . . The legislature may select one phase of one field and apply a remedy there, neglecting the others."

Id. at 591-92 (quoting Williamson v. Lee Optical, 348 U.S. 483, 489 (1955)); see Braunfeld v. Brown, 366 U.S. 599, 601 (1961) (plurality opinion) (rejecting an equal protection challenge to the Pennsylvania statute considered in Two Guys); Gallagher v. Crown Kosher Super Market, 366 U.S. 617, 622-23 (1961) (plurality opinion) (finding that the exceptions to a Massachusetts law prohibiting Sunday commerce were "reasonably explainable on their face" as enhancing "the day's special character" or, at least, as not detracting from it).

We now turn to the Texas courts. In State v. Spartan's Industries, Inc., 447 S.W.2d 407 (Tex. 1969), the Supreme Court of Texas considered an equal protection challenge to an earlier version of the Blue Law: Texas Penal Code article 286a, which authorized injunctions against sales of certain items on consecutive days of Saturday and Sunday, and other code provisions levying fines for opening a place of business on Sunday. The court concluded that the statute was intended to achieve a "one day a week surcease from commerce" and that "[t]he Legislature was entitled to expect that Article 286a would yield

28

Sunday operations only by Sabbatarians and perhaps an occasional small storekeeper," id. at 412, because the typical merchant given a choice between opening on Saturday or Sunday was unlikely to choose to be open on Sunday, see id. at 411. The court also rejected the storekeepers' claim that they were denied equal protection because the statute authorized an injunction only against those who were in the business of selling certain enumerated articles. See id. at 412. The court stated that Two Guys involved nearly exactly the same commodities as article 286a, and it upheld the Texas law on the grounds that sellers of the named items were "particularly disrupting." Id.

In 1973, the Texas legislature repealed the Penal Code provisions (articles 282 through 287) broadly prohibiting labor and sales on Sunday, leaving only the commodities listed in the former article 286a, recodified as article 9001 of the Texas Civil Statutes, as those that could not legally be sold on consecutive Saturdays and Sundays. See Gibson Prods. Co. v. State, 545 S.W.2d 128, 129 (Tex. 1976). In Gibson, a merchant argued that there was no rational justification for article 9001's proscriptions on goods that could be sold. Whereas article 286a had been part of a larger legislative scheme requiring almost all stores to close one day of the weekend, with enhanced penalties for certain types of stores, article 9001 now restricted sales of only certain kinds of goods. See id. Nevertheless, the court upheld the statute:

> In State v. Spartan's Industries, Inc., supra, we said
> that we understood the principal plan of this statute to be

29

the provision of effective sanctions to close most mercantile establishments on Sunday--Saturday being the better day for sales than Sunday. Allowing latitude for Sabbatarians and for some who prefer to tend only the Sunday trade, the Legislature thereby maintains the prevailing custom of people doing their serious shopping for clothing, furniture, automobiles, household and office appliances, and hardware on weekdays. When the Legislature retained the statute in 1973, it apparently decided to continue to serve that purpose. We regard the matter as a legislative question and reaffirm the constitutionality of the present statute.

Id. at 129-30. Texas courts subsequently have upheld article 9001 against a variety of attacks. See Gibson Distrib. Co. v. Downtown Dev. Ass'n, 572 S.W.2d 334, 335 (Tex. 1978) (rejecting equal protection, due process, and federal preemption challenges); State v. Revco, D.S., Inc., 675 S.W.2d 219, 221 (Tex. App.--Dallas 1984, no writ) (holding that challengers failed to establish in a summary judgment proceeding that there was no reasonable relation between article 9001 and the health, recreation, and welfare of the people of Texas); cf. Michelle Corp. v. El Paso Retailers Ass'n, 626 S.W.2d 615, 616 (Tex. App.--El Paso 1981, writ ref'd n.r.e.) (holding that a plaintiff seeking a preliminary injunction against violations of article 9001 completes its case upon showing that the defendant sold the enumerated items on both Saturday and Sunday).

But the statutes involved in these cases differ from the current Texas Blue Law in one crucial respect: Whereas the older laws proscribed the sale on consecutive days of Saturday and Sunday of a relatively long list of items, the statute at issue here applies only to motor vehicles. Every other article may be sold seven days a week. Our task is to determine whether such a

30

restriction bears a rational relationship to a legitimate state end.  We have emphasized that in suits involving a challenge to a law's rational basis, the burden is not upon the state to establish the rationality of its statute, but is upon the challenger to show that the restriction is wholly arbitrary.  See Home Depot, Inc. v. Guste, 773 F.2d 616, 621 (5th Cir. 1985).

Although the original justification for the Texas Blue Laws was to achieve a one-day surcease from commerce, see Spartan's Indus., 447 S.W.2d at 411, the legislature found when enacting the current version of the statute that

> regulation of the purchase, sale, and exchange of motor vehicles on certain days, as part of the state's motor vehicle regulatory scheme, is a valid exercise of the state's police power in order to provide maximum protection to consumers of motor vehicles and that this regulation is necessary for the preservation of the public health, safety, and welfare.

TEX. REV. CIV. STAT. ANN. art. 6686-1 note (Vernon 1985); see TEX. REV. CIV. STAT. ANN. art. 6686-1, § 5 (Vernon 1985) ("The purpose of this Act being to promote the health, recreation, and welfare of the people of this state . . . .").[10]

We think that Harris County has a substantial likelihood of prevailing on the merits of this issue.  At the preliminary

---

[10] The current Blue Law, which applies only to motor vehicles, was enacted in 1985.  See Act of May 17, 1985, 69th Leg., R.S., ch. 220, § 3, 1985 Tex. Sess. Law Serv. 1767, 1768. In 1995, the legislature repealed this version, see Act of Apr. 21, 1995, 74th Leg., R.S., ch. 165, § 24(a), 1995 Tex. Sess. Law Serv. 1025, 1871, and recodified it, with non-substantive revisions, to appear at its present location in the Texas Transportation Code, see id. at 1830.  The current codification does not contain a statement of legislative purpose.  See TEX. TRANSP. CODE §§ 728.001-.004.

31

injunction hearing before the district court, the County elicited testimony that because the demand for motor vehicles is inelastic, allowing car dealership employees to work both days of the weekend would impose hardship on them without any increase in the number of cars purchased. The additional cost of paying the existing employees overtime (or hiring additional staff) then would be passed on to the consumer in the form of higher car prices. The County's witnesses also stated that a seven-day work week would create burdens on state licensing, titling, and dealership inspection personnel and that Sunday sales were impractical because it is difficult to obtain insurance, licensing information, and employment or residency verification on that day. Finally, several witnesses testified that consumers supported the Blue Law because it allowed them to browse car dealership lots one day a week without encountering salespeople. We think that this evidence suffices to show a substantial likelihood that there is a rational relationship between the Blue Law and the purposes for which it was enacted. Cf. Lakeside Imports, Inc. v. State, 639 So. 2d 253, 256-57 (La. 1994) (concluding that a Louisiana law barring the Sunday sale of cars and trucks was rationally related to the legitimate state objective of protecting small rural dealerships from unfair competition by large metropolitan dealerships, consumers from higher prices for automobiles brought on by higher overhead from Sunday sales, and the welfare of commissioned car salesmen).

32

We caution the district court, however, that while Harris County has shown a substantial likelihood that there is a rational relationship between the Blue Law and the purposes for which it was enacted, CarMax has raised a number of countervailing considerations that must be weighed carefully before a permanent injunction is issued. It is true, of course, that rational basis review does not require that a legislature actually articulate at any time the purpose or rationale supporting its classification, and the reviewing court need only find that a legitimate goal "conceivably" or "reasonably" could have been the purpose and policy of the relevant decisionmaker. Nordlinger v. Hahn, 505 U.S. 1, 15 (1992). But the Supreme Court also has made clear (albeit in contexts somewhat different from ours) that the rational basis test "is not a toothless one." Mathews v. Lucas, 427 U.S. 495, 510 (1976) (examining the constitutionality under the Fifth Amendment's Due Process Clause of a federal statute regulating eligibility of illegitimate children for insurance benefits); see Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 447-50 (1985) (holding that, under rational basis review, an ordinance requiring a special use permit for homes for the mentally retarded violated equal protection). CarMax argued vigorously that the state legislature could not rationally have thought that the Blue Law benefits consumers or protects the health, safety, and welfare of the people of Texas. It contended, for example, that the cost per car sold is lower with a seven-day week than with a six-day week

33

and that the principal expense of opening a seventh day is the variable cost of the salespeople's pay, which is absorbed by the cars they sell. CarMax also pointed out that it employs several shifts of sales consultants and that each sales consultant typically works only forty to forty-five hours per week. Finally, CarMax asserted, it had experienced no problems obtaining insurance and financing on Sundays, and consumers appreciate being able to shop on both weekend days. While we think that the County showed a sufficient likelihood of success on the merits to survive a challenge at the preliminary injunction stage, we caution that there are a number of considerations that must be carefully examined when this case comes up on an application for a permanent injunction. With that caveat, we proceed to CarMax's other arguments.

## 2. Special Law

Article III, § 56 of the Texas Constitution provides that "[t]he Legislature shall not, except as otherwise provided in this Constitution, pass any local or specialized law" for certain named purposes. In addition, "in all other cases where a general law can be made applicable, no local or special law shall be enacted . . . ." TEX. CONST. art. III, § 56. "The primary and ultimate test of whether the law is general or special is whether there is a reasonable basis for the classification it makes and whether the law operates equally on all within the class." Trinity River Auth. v. URS Consultants, Inc.--Texas, 889 S.W.2d 259, 265 (Tex. 1994); see Edgewood Indep. Sch. Dist. v. Meno, 917

34

S.W.2d 717, 745 (Tex. 1995). We concluded above that Harris County has a substantial likelihood of successfully showing that there is a reasonable basis for the Blue Law's classification, and CarMax does not contend that the statute does not apply equally to all motor vehicle dealers. Therefore, we decline to disturb the district court's preliminary finding that the Blue Law is not special legislation in violation of the Texas Constitution.

### 3. Vagueness

CarMax also argues that the Blue Law is impermissibly vague because the phrase "offer for sale" fails to provide persons of ordinary intelligence an opportunity to know what is prohibited. According to CarMax, it is unclear whether "offer for sale" includes allowing consumers to review its inventory via the Internet, a fact the district court itself acknowledged when it limited its injunction to prohibit selling or offering to sell motor vehicles "on the premises" of CarMax's Harris County locations.[11] At the preliminary injunction hearing, however,

---

[11] Although the current Blue Law's predecessors have been attacked on vagueness grounds, these challenges have focused on the list of items subject to the statute and not on the phrase "offer for sale." See Home Depot, 773 F.2d at 627-29; Spartan's Indus., 447 S.W.2d at 413; Retail Merchants Ass'n v. Handy Dan Hardware, Inc., 696 S.W.2d 44, 51-52 (Tex. App.--Houston [1st Dist.] 1985, no writ); Michelle Corp. v. El Paso Retailers Ass'n, 675 S.W.2d 610, 611-12 (Tex. App.--El Paso 1984, no writ); Hill v. Gibson Discount Ctr., 437 S.W.2d 289, 292 (Tex. Civ. App.--Amarillo 1968, writ ref'd n.r.e.); Spartan Indus., Inc. v. State, 379 S.W.2d 931, 932 (Tex. Civ. App.--Eastland 1964, no writ). This precedent does not assist us in evaluating CarMax's argument.

Harris County stipulated that it was not seeking to enjoin CarMax's Internet operations, and in its brief to this court, the County concedes that "Chapter 728 has absolutely no effect on Carmax' [sic] use of the Internet."

CarMax lacks standing to press this challenge. Its argument that the County cannot enforce the Blue Law because it is not clear whether "offer for sale" applies to Internet activity amounts to a contention that the Blue Law is unconstitutionally vague on its face. A facial challenge for vagueness is appropriate only on an allegation that the law is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." Ferguson v. Estelle, 718 F.2d 730, 735 (5th Cir. 1983) (citing Smith v. Goguen, 415 U.S. 566, 578 (1974)). CarMax does not claim that the Blue Law is inherently standardless, enforceable only on the exercise of the state's unlimited and arbitrary discretion; instead, it complains that the statute is imprecise in that it does not make clear whether it applies to Internet activity. But a litigant will not be permitted to challenge a statute for imprecision if his own conduct is clearly within the core of proscribed conduct, see id., and in fact, as applied here, the Blue Law does not implicate the Internet at all, and CarMax does not claim that it fails to give adequate notice as to whether it reaches on-the-premises motor vehicle sales, cf. Home Depot, 773 F.2d at 629 (finding that a Louisiana law barring the

36

sale of certain items on Sunday was not facially unconstitutional because "there is patently a substantial core of products to which [the statute] is not impermissibly vague"). CarMax has no standing to challenge the Blue Law as it might be applied to others. See Ferguson, 718 F.2d at 735; see also Basiardanes v. City of Galveston, 682 F.2d 1203, 1210 (5th Cir. 1982) ("Ordinarily, a litigant to whom a statute clearly applies lacks standing to argue that the statute is vague as to others.").[12]

In summary, Harris County has shown that it has a substantial likelihood of success on the merits. We therefore decline to reverse the district court's grant of a preliminary injunction on this ground.

**D. Did the district court's grant of a preliminary injunction violate Federal Rule of Civil Procedure 65(a)(1)?**

Finally, CarMax contends that the district court's grant of a preliminary injunction violated Federal Rule of Civil Procedure 65(a)(1) because the court construed Harris County's motion for a

---

[12] CarMax also contends that the Blue Law unconstitutionally interferes with interstate commerce in violation of the Commerce Clause. CarMax argues that the state can enforce the Blue Law only by barring vendors from offering used cars for sale on their Internet sites on consecutive Saturdays and Sundays regardless of the regulated business's geographical location, and because of the national scope and interconnectedness of the Internet, such a restriction is essentially an unconstitutional blanket prohibition on an entire category of Internet commerce. As we mentioned above, however, Harris County explicitly stated at the preliminary injunction hearing that it was not seeking to restrain CarMax's Internet activity, and the district court's injunction applies only to sales or offers to sell "on the premises" of CarMax's three Harris County stores. We therefore leave the question of whether the Blue Law violates the Commerce Clause by inhibiting Internet activity for another day.

temporary restraining order as a motion for a preliminary injunction, gave CarMax only three business days' notice that it should be prepared to defend against a motion for a preliminary injunction, and allowed only two hours for the hearing.

Rule 65(a)(1) provides that "[n]o preliminary injunction shall be issued without notice to the adverse party."  The Rule's notice requirement necessarily requires that the party opposing the preliminary injunction has the opportunity to be heard and to present evidence.  See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, Local No. 70, 415 U.S. 423, 434 n.7 (1974) ("The notice required by Rule 65(a) before a preliminary injunction can issue implies a hearing in which the [opposing party] is given a fair opportunity to oppose the application and to prepare for such opposition."); Commerce Park at DFW Freeport v. Mardian Constr. Co., 729 F.2d 334, 341 (5th Cir. 1984) (explaining that Rule 65(a) mandates that where factual disputes are presented, "the parties must be given a fair opportunity and a meaningful hearing to present their differing versions of those facts before a preliminary injunction may be granted").  Furthermore, notice under Rule 65(a)(1) should comply with Rule 6(d), which requires five days' notice before a hearing on a motion.  See Marshall Durbin Farms, Inc. v. National Farmers Org., 446 F.2d 353, 358 (5th Cir. 1971) (citing FED. R. CIV. P. 6(d)).  Because "[c]ompliance with Rule 65(a)(1) is mandatory," a preliminary injunction granted without adequate notice and a fair opportunity to oppose it should be vacated and remanded to the

district court.  Parker v. Ryan, 960 F.2d 543, 544 (5th Cir. 1992).

CarMax, however, failed to preserve error below.  Typically, we will not consider on appeal matters not presented to the trial court.  See Quenzer v. United States (In re Quenzer), 19 F.3d 163, 165 (5th Cir. 1993).  Rather, the litigant must raise his argument to such a degree that the district court may rule on it.  See FDIC v. Mijalis, 15 F.3d 1314, 1327 (5th Cir. 1994).  Before the district court, CarMax never requested a postponement of the preliminary injunction hearing.  Instead, it filed a detailed Brief in Opposition to Request for Injunctive Relief accompanied by six exhibits, including transcripts of a temporary restraining order hearing in the Northern District of Texas and the pre-removal state court proceedings in the instant action.  During the preliminary injunction hearing itself, CarMax presented the testimony of three witnesses, including its president and the manager of Internet activity for its parent company, and vigorously cross-examined Harris County's four witnesses.

Moreover, even if CarMax had not waived its Rule 65(a)(1) argument, the record suggests that CarMax had ample notice and opportunity to oppose Harris County's motion for a preliminary injunction.  CarMax first received notice that Harris County was seeking a temporary restraining order and preliminary and permanent injunctions on July 1, 1998, when the County filed its petition in state court.  Furthermore, the County states in its brief, although no evidence to prove or disprove this contention

appears in the record, that the federal district court informed CarMax at a conference on July 13, 1998, that the preliminary injunction hearing would take place on July 27, 1998. Finally, as we observed above, CarMax had a full opportunity during the hearing itself to defend its position.

Under all these circumstances, we cannot say that CarMax was deprived of notice and an opportunity to oppose the preliminary injunction in violation of Federal Rule of Civil Procedure 65(a)(1).

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the preliminary injunction entered by the district court.